TRAVIS WINHAM v. MARIA E. CRUTCHER et al.

VOID AND VOIDABLE ACT. *Ratification. Estoppel. Appeal bond.* A judg-ment was rendered by a justice of the peace against S and M, first and second accommodation endorsers. Appeal was granted and S signed his name and the name of M without his authority, to the ap-peal bond. W signed the bond as their surety. Judgment was ren-dered in the circuit court against S, M and W. W paid the debt and seeks to recover of M, S being insolvent. M heard of the signing of the appeal bond by S and denied his authority to sign his name, but took no steps to prevent judgment against him in the circuit court, and after judgment in the circuit court pointed out to the officer the property of S. *Held,* that M was liable. The signing of the name of M by S, although unauthorized, was not void but voidable by a judg-ment of a court, if promptly done, but after long acquiescence he thereby ratifies the act and is estopped from disclaiming his liability upon the bond.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

J. P. HELMS for complainant.

D. CAMPBELL & SON for defendant.

FREEMAN, J., delivered the opinion of the court.

The real contest now before us is between com-plainant Winham and respondent Murray. The case is this: One Shankland had become the first accom-modation endorser for Lucas, on notes given to Mrs. Crutcher. Murray was the second endorser. Mrs.

Crutcher brought suit in February, 1868, before a justice of the peace for Davidson county on this debt, and had judgment against Shankland and Murray. Shankland prayed an appeal for himself and Murray, and signed his own name and the name of Murray to the appeal bond. He then requested Winham to go security on the bond for the appeal. Winham does not appear to have known that Shankland had signed Murray's name to the bond, and it does appear that he in good faith went on the bond believing he was the surety of both Shankland and Murray. The judgment of the justice was affirmed on trial before a jury, December, 1868, in the circuit court, and judgment rendered against Shankland and Murray, and against Winham, as their surety on the appeal bond. It turns out that Murray did not authorize the appeal to be taken in his name, nor Shankland to sign his name to the appeal bond. If this was all the case, there would be an end of it, as Murray would clearly not be liable, whenever he interposed the plea of *non est factum* to the bond, or might be relieved in equity from such liability by injunction against its enforcement.

But in addition to the above, it appears that a few days after the appeal was taken, Winham told him he had gone his surety on the bond for appeal. Murray, at this, said to him he had not authorized the appeal nor signing of his name. Murray then went to the justice, who told him the papers had been sent to the circuit court. He then went to the clerk, as he says, to have his name taken off the bond, but on the clerk

giving him the opinion that no judgment could be rendered against him, if he did not sign the bond or authorize it, he quietly let the matter stand, taking no action whatever to dismiss the appeal or have himself released from the bond. Thereupon a judgment was rendered against him, Shankland, and Winham as surety for appeal. Winham has paid the balance of the judgment, and seeks to hold Murray responsible over to him for his reimbursement as his surety. There are some other facts bearing on this question, which will be noticed as we proceed.

The case of *Coles* v. *Anderson*, 8 Hum., 491, is cited as authority for the non-liability of Murray in this case. That case was unquestionably correctly decided. Coles had not appealed as in this case, but an appeal without his knowledge or consent. But in that case, Coles, who had not appealed, promptly disaffirmed the act of the parties appealing for him, and at once took effective measures, by filing his bill to enjoin the plaintiff from making the money out of his property, as soon as he had knowledge of the facts, which was when an execution was levied on his property.

In this case, the party had knowledge of what had been done in a few days after it was done, and while disclaiming the authority of the parties, in words, to act for him, yet took no steps whatever to effectuate that disclaimer. On the contrary, he by his conduct acquiesced in what had been done, and permitted the judgment to be rendered against himself, and also his surety on the appeal bond Winham, and Winham has been compelled to pay the same. He not only re-

mained silent up to this point, but submitted to the judgment for about seven years, before making any effort whatever to contest his liability, and now makes this contest with only the surety Winham, who has paid the debt. In addition, when an execution issued on the judgment, and the officer called on him with the execution, he not only did not then disaffirm his liability, and took no steps to have the judgment set aside or his non-liability declared; but, on the contrary, distinctly recognized his liability in the precise order in which he understood himself liable by his undertaking as second endorser, and went with the officer to Shankland, the first endorser's, house, and there pointed out property to be levied on in his exoneration, and urges this as an additional defense in this case. It is true the officer permitted Shankland to put him off, by an agreement, the terms of which we do not see, but this does not change the result of the conduct of Murray, nor modify its meaning. It meant a recognized secondary liability under that judgment, and that his property was liable to the execution, after Shankland's, or it meant nothing.

The fact is, Shankland was then, and for several years after the appeal and bond, perfectly good, and the only inference to be fairly drawn from the conduct of Murray is, that in view of this fact, after he knew all about the appeal, he concluded to acquiesce in what had been done, and take the benefit of the delay thereby accruing to him. After seven or eight years have been suffered to pass, and Shankland becomes insolvent, he has changed his mind, and for the first

time raises this contest, to avoid his liability to Win-
ham. It is clearly an after-thought, born ·of the new
conditions that have arisen since the original transac-
tion.

It is assumed, that the signing of the bond by
Shankland was absolutely void—a nullity—and ˙therefore·
there could grow out of this act no liability whatever.
This is popular language, and is frequently loosely
used in our opinions, where in connection with the·
facts, it sufficiently expresses the idea intended to be·
conveyed. In fact such an act, done by a party pur-
porting to act for another, is only voidable on pre-
sentation of the facts, and by the judgment of a court,
when the facts are put in issue, by the proper plead-
ings as between the party whose name is thus signed,
and an obligee to whom a liability has been *prima*
*facie* created. To have avoided a judgment in the·
circuit court, Murray had a remedy easy and simple,
that is, he could at once dismiss his appeal. This it
was his duty to have done at once. Instead of that
he has permitted the appeal to continue, a judgment
to be rendered against himself, as well as his surety
Winham, and when Winham has been made to pay,
he then interposes the plea of *non est factum*, to pre-
vent reimbursement of the surety. Winham could not
have dismissed this appeal. If he had attempted to
be released of his liability on the bond, Murray could
have ratified the act of Shankland in signing his name,
and prevented Winham's release—even if he had found
any means by which to raise the question, by inter-
posing the facts. We cannot see how in fact he could.

have done so, as he had no right to avoid the liability of Murray on the bond, while Murray himself acquiesced in it.    To get the benefit of the plea of *non est factum* on the part of Murray was perhaps beyond his power.    Murray having failed to take such action as he might, or in fact any action whatever, to avoid his liability on the bond—a judgment having been rendered against him in the circuit court, which stands in full force so far as he is concerned, he is now estopped after his long acquiescence, as against a surety, equally innocent with himself, from disclaiming his liability on the bond.

That this is a case where Murray might ratify the act of Shankland, is beyond question.    It is a contract made in his name by another purporting to act for him—one not forbidden by law or public policy to be made.

The only question is, has he done it?    It is well settled, that where a party, with full knowledge of all the facts creating the liability, acquiesces in what has been done, he thereby ratifies what is done, and silence in such a case, after a reasonable time, will amount to a ratification: *Fort* v. *Coker*, 11 Heis., 589.

The acts of a party conclude him, especially where others are concerned, notwithstanding he may make declarations to the effect that he did not so intend: 7 Baxt., 260.    The acts of a party assuming to act for another may be presumed to have been ratified by the principal, when the acts and conduct of the latter are inconsistent with any other supposition—as where he waives and holds the fruits of the agent's

acts, and in many other cases: Wait's Act. & Def., vol. 1, 234, and authorities cited. Murray in this case got the benefit of the delay of the appeal with a full knowledge it had been taken, and all the facts and circumstances attending it.

Under all these principles, we think Murray has ratified the act of signing his name—and by his acquiescence, has involved Winham in a judgment in the circuit court, which, having paid, he is entitled to hold him as surety bound to reimburse him.

For these reasons, the decree below must be reversed, and a decree for Winham, for balance due on the judgment paid by him. Costs to be paid by Murray.

JONES, Sp. J., delivered the following dissenting opinion:

On the 11th of February, 1868, Maria E. Crutcher recovered a judgment before a justice of the peace of Davidson county, against A. B. Shankland and T. B. Murray, for $345.62. From this judgment an appeal was taken to the circuit court, the appeal bond reciting that both defendants appealed, but showing that the name of Murray was signed thereto by Shankland. Complainant Winham signed this bond as surety, On November 9th, 1868, the judgment of the justice was affirmed in the circuit court, and judgment rendered against Shankland and Murray, and complainant Winham as their surety on appeal. On the 19th of De-

cember, 1868, as appears from the execution docket, an execution issued upon this judgment, "returned levied on land, not sold for want of bidders, January 25th, 1869."

No other steps appear to have been taken to collect the judgment until the 31st of May, 1875, when an alias *fi. fa.* was issued and levied upon the property of Winham, who on the 7th of August, 1875, filed his original bill against Maria E. Crutcher, Shankland and Murray, enjoining the collection of this judgment out of the property of the complainant on various grounds, averring that he had "told the officer that he was only the surety, and he must make the money out of the principals, and that Murray, if not Shankland, was perfectly solvent."

On the 3d of December, 1875, he filed an amended bill, and thereupon, by consent, the cause was heard upon the motion of Maria E. Crutcher to dismiss the original and amended bills, for want of equity on their face. The motion was sustained by the chancellor, and the bills dismissed as to Maria E. Crutcher, with costs.

The complainant prayed an appeal to the Supreme Court, which was granted, and on the 12th of February, 1877, the decree of the chancellor was affirmed by this court. The original bill being undisposed of as to defendants Shankland and Murray, as it was supposed, Murray, on the 1st of March, 1877, filed his answer to the same, and on the 14th of March 1877, a cross-bill against Winham and Shankland, which he asked might be taken as an original bill against

Maria E. Crutcher. In this answer and cross-bill
Murray sought relief, as against Maria E. Crutcher,
on the ground of the levy of the execution which had
issued in December, 1868, upon the judgment of the
circuit court, upon the real estate of Shankland,
and abandoned; and also upon an equitable release by
pointing out of property of Shankland sufficient to
satisfy the execution, and the conversations and actions
of the attorney of Crutcher, alleged to have taken
place in 1869. This answer and cross-bill sought re-
lief, as against Winham, upon the ground that the
original liability of Shankland and Murray, on which
the judgment of the justice was recovered, was as ac-
commodation endorsers of a note of one W. R. Lucas,
Shankland being the first and Murray the second en-
dorser; that the appeal from the justice's judgment
was by Shankland alone, Murray having taken no ap-
peal, and did not sign, or authorize Shankland to sign,
his name to the appeal bond, and that complainant
Winham became surety of appeal at the request of
Shankland and for him alone, and that complainant
was, therefore, liable to the judgment creditor before
Murray.

Complainant Winham then filed, on the 26th of
March, 1877, what he terms his second amended bill,
and again enjoined the Crutcher execution.

This bill is also filed upon the idea that the orig-
inal and amended bills had been remanded to the
chancery court of Davidson, and that complainant is
entitled to the defense embodied in the answer and
cross-bill of Murray. Maria E. Crutcher moved to

dissolve the injunction which had been granted upon the filing of this second amended bill, for want of equity upon its face, which motion was sustained upon the execution of a refunding bond, which was done, and the money collected out of Winham.

Upon filing a copy of the decree of the Supreme Court, it was ascertained that the cause had not been remanded to the chancery court of Davidson.

On the 11th of June, 1877, complainant Winham files his answer to the cross-bill of Murray, in which he alleges that the original and amended bills had been dismissed by the decree of the chancery court, which had been affirmed by the Supreme Court, and that Murray had no right to file a cross-bill to bills which were out of court, and relies upon the same in lieu of Murray's right to prosecute his cross-bill. The answer admits the rendition of the judgment in February, 1868, by the justice of the peace, but denies that he had any knowledge that the appeal was taken against the wishes of Murray, or that Shankland did not have authority to sign his name to the appeal bond—insists that Murray acquiesced in said appeal, for, having been informed that said appeal had been taken, he took no steps to have said appeal dismissed or prevent an affirmance of the judgment in the circuit court, and that he ratified the validity of said judgment against him by pointing out to the officer who had the execution, personal property of Shankland's sufficient to pay the same. The answer further states that respondent had been compelled to pay the balance due upon the judgment, and asks for a decree

against Mrs. Crutcher or Murray for the same. The depositions of Murray and Winham are taken.

The chancellor dismissed the second amended bill, because, as to Mrs. Crutcher, there was no equity upon its face. "And if it be treated as an amendment to the original bills, it must share their fate. For, having been filed upon the supposition that those bills were still in court by the remand of the Supreme Court, and it now appearing that there was no such remand, there is nothing for the second amendment to attach itself to. If it be treated as an original bill, the record shows complainant has had his day in court already for the same matter, and cannot be heard again. That it cannot be sustained as a bill of review for newly discovered matter. The allegations of the bill cannot be supplemented by reference to Murray's answer and cross-bill. A bill must be complete in itself, and cannot, by a reference to other proceedings, make the contents of such proceedings a part thereof."

The cross bill, or more properly speaking, the original bill of Murray as to Mrs. Crutcher was also dismissed, but gave a decree in his favor against Winham, and made the injunction perpetual, which had been issued enjoining Winham from prosecuting any suit against him, Murray, to recover the money which he, Winham, had been compelled to pay in satisfaction of the judgment in favor of Mrs. Crutcher. From this decree complainant Winham has appealed to this court.

Mrs. Crutcher having collected all the balance of

her judgment and interest thereon from Winham, the real contest before us is between him and Murray on on the cross-bill of the latter.

The first question presented for our consideration is, whether the judgment of the circuit court is valid against Murray? The proof in the record establishes the fact beyond dispute that the note upon which the judgment was rendered by the justice of the peace was a note given by one W. R. Lucas, and upon which Shankland was the first and Murray the second accommodation endorser—that Murray was not present at · the trial—and that Shankland prayed an appeal to the circuit court, and signed his name to the appeal bond without his authority or consent, and procured Winham to become their surety on the appeal bond.

In the case of *Coles* v. *Anderson & Griswold,* 8 Hum., 490, Coles was the accommodation endorser upon a note made by Summerhill & Lawrence and Robert Sypert. Suit was brought against all of the parties jointly in the circuit court of Wilson county, and judgment was rendered against all of the parties for the amount of the note and interest thereon. Coles was not present at the term of the court when the judgment was rendered. Summerhill and Sypert prayed an appeal to the Supreme Court for all of the defendants—the attorney whom Summerhill had employed to file some pleas for delay, signed the name of Coles without his authority to the appeal bond. Summerhill or Sypert procured Anderson to become their surety. The judgment was affirmed in the Supreme Court, and

·an execution was issued and levied upon the property ·of Coles—the makers of the note having become insolvent. Coles filed his bill enjoining the plaintiff in ·said judgment from enforcing satisfaction from him, and to have the property of Anderson, who was solvent, subjected to the satisfaction of said judgment. ·Judge McKinney, who delivered the opinion of the court, says: "Upon these facts is complainant entitled to relief in equity? We think he is; first, because in view of a court of equity, he was not a party to ·the judgment in the Supreme Court which is sought to be enforced against him. He did not join in ·the ·appeal; it was prosecuted without his knowledge or ·consent; the other defendants had no right or authority by law, to join him in the appeal without his assent; and their doing so was a fraud upon his rights. .The signing of his name to the bond was a nullity."

In a more recent case of *Cowan* v. *Morrison et al.,* ·4 Baxt., 378, Cowan sued· Morrison, McGarvey & Price ·upon a note before a justice of the peace, who rendered judgment upon the same against all the parties. Price had signed his name to the note as surety. .McGarvey appealed to the circuit court, where the ·judgment was affirmed against all of the parties. Price ·entered a motion for a new trial, which being overruled, appealed to the Supreme Court. Judge Freeman, who delivered the opinion of the court, held: ·" No appeal having been taken by Price from the judgment of the justice to the circuit court, he had no .status in that court, and· the judgment was void as to .him."

But it is insisted that after the appeal had been taken from the judgment of the justice of the peace, and before its affirmance in the circuit court, Murray had notice that the appeal had been taken, and that his name had been signed to the appeal bond by Shankland, and failed to appear in court and have the appeal dismissed as to him, or made any defense to the affirmance of said judgment, and thereby acquiesced in said appeal and is estopped from denying the validity of said judgment against him. The proof in the record shows that after the appeal had been taken from the judgment of the justice of the peace to the circuit court, Winham met Murray on the street in the city of Nashville, and told him that he had signed the appeal bond as his and Shankland's surety in their appeal from the judgment of the justice to the circuit court. Murray immediately informed him, that Shankland had no authority to pray an appeal, or sign his name to the appeal bond, and that he (Winham) was Shankland's surety and not the surety for him.

The cases of *Barham* v. *Turbeville,* 1 Swan, 436, of *Thompson* v. *Dawson,* 3 Head, 384, and of *Butler* v. *Williams,* 5 Heisk., 241, are relied upon to sustain the argument that a failure on the part of Murray to employ an attorney and make his defense in the circuit court, is an acquiescence in the appeal and estops him from impeaching the validity of the judgment. The cases cited ere where parties having title to property stand by and witness its sale by others, and make no claim to the property, and encouraging the purchaser to buy it, they are repelled from a court of equity

upon the ground of positive fraud. Can it be urged that Murray was guilty of any fraud, from the facts disclosed in this record? Did he stand silent, or say or do any thing to induce Winham to believe he acquiesced in the appeal? Or that he would not impeach the validity of the judgment, if one was rendered against him? On the contrary he distinctly told him that Shankland had no right to take the appeal for him, or sign his name to the bond, and that he (Winham) was not his surety, but the surety of Shankland.

The cases of *Morgan* v. *Cooper*, 1 Head, 431, and of *Pitts* v. *Gilliam*, 1 Head, 553, are also relied upon. The former of these cases is where a stayor of a justice's judgment accepted a mortgage from the judgment debtor to indemnify him as such stayor—the court held he was estopped from denying the validity of his stay. In the latter case is where the court held that a party is estopped from denying his liability upon a note after he accepted and claimed the benefits of a trust deed. Even if his name is forged to a note, by his acceptance of the indemnity he thereby ratifies his signature and is estopped from denying it, or seeking relief in equity: *Jones* v. *Hamlet*, 2 Swan, 256.

These cases are decided alone upon the ground that a party accepting of the provisions of a mortgage or deed of trust to secure them where they are sureties, or their names appear upon the notes as sureties, from afterwards denying their liability upon said notes.

I am not able to see their bearing upon the case

before us. Can any decision be found in which any court has ever held, that if a party refuses to accept of these provisions of the mortgage or trust deed, that he could not make his defense against the payment of a forged note in any court in which he may be sued? I understand the doctrine of estoppel *in pais* can only apply where some declaration is made or act done, to influence the conduct of another in his dealing, and which actually leads him into a line of conduct which must be prejudicial to him: *Dechard* v. *Blanton*, 3 Sneed, 374. I am not able to find any thing in this record which was said or done by Murray or intended by Murray to mislead Winham into a line of conduct prejudicial to his interest, or in any manner or in any respect it has injured him. If Murray had appeared in the circuit court, he could only have dismissed the appeal as to himself—that he did not do so, was because the clerk of the circuit court misled him by telling him that no judgment could be taken against him, as it was seen from an inspection of the bond that his name had been signed to the same by Shankland. While it is true this would not excuse him from a legal duty, yet it proves that he acted in ignorance of his rights. And in the case of *Bennets* v. *Colley*,, 7 Eng. Ch. Rep., 232, and cited approvingly in the case of *Scott* v. *Johnson*, 5 Heis., 633, the Lord Chancellor says: "It can never be maintained that the acquiescence of a party under ignorance of his rights operates as a waiver of any claim, or as a confirmation of any thing done against him."

Again, it is very ably and plausibly argued that Murray recognized the validity of said judgment, and ratified the same by seeking an introduction to the officer who had the execution, and going with him to the house of Shankland, pointing out personal property sufficient to pay the judgment and directing him to levy upon the same.

In the case of *Cherry* v. *Newsom*, 3 Yer., 369, Whyte, Judge, who delivered the opinion of the court, said that "no act will amount to a confirmation of an impeachable transaction, unless the party has become aware of the fraud, and also aware *that his act will have that effect.*"

In the case of *Scott* v. *Buchanan*, 11 Hum., 468, Judge Totten, after reciting various decisions, says: "In view of conflicting authorities on the subject, we can only declare such conclusions from them as we may think most reliable, and in accordance with general principles. If the vendee rely upon an express ratification of a voidable contract, it must appear that the act of confirmation was direct and deliberate, and done with a full knowledge that it was to have that effect." "If the vendee rely upon the implied confirmation of the voidable contract, it must appear from facts and circumstances tending to prove a recognition of the contract, and inconsistent with the idea of any intention to avoid it." The first intimation that Murray had that any judgment had been rendered against him in the circuit court, was when he met Gen. Maney upon the streets in the city of Nashville, who told him that an execution had been issued upon said

judgment and was in the hands of an officer. He then told Gen. Maney that he had not appealed from the judgment of the justice of the peace, and had not authorized Shankland to appeal for him, or sign his name to the appeal bond, and that the judgment was void as to him and he would resist any attempt to collect it out of him, but that Shankland was good, and if he would introduce him to the officer he would show him personal property of Shankland's sufficient to pay the judgment—and did accordingly go with the officer and point out to him property. Whether the execution which the officer then had in his hands was a court execution, or one issued by a justice of the peace, is not very certain, as there appears to have been two judgments rendered by the same justice, about the same time and for the same amounts. But concede that it was the execution which had issued upon the judgment in the circuit court, how can it be said that these acts and declarations are a recognition of the validity of the judgment as to him, "and inconsistent with any idea on his part to avoid it," when he expressly said the judgment was void as to him, and he would resist any attempt to collect it from him? Unless we overrule these cases, I think they are decisive of the question.

In the case of *Coles* v. *Anderson,* 8 Hum., 491, Coles was the accommodation endorser—in the case before us Murray is the accommodation endorser. Coles was sued jointly with the makers of the note—Murray is sued jointly with Shankland, the first endorser. A joint judgment is rendered against Coles and the other

defendants—a joint judgment is rendered against Murray and Shankland. Coles was absent from the court room when the judgment was rendered—Murray was absent from the office of the justice of the peace when the judgment was rendered. Summerhill and Sypert prayed an appeal to the Supreme Court in the name of all the defendants against the wishes of Coles, and the attorney for Summerhill signed the name of Coles without his consent and without his authority, and procured Anderson to become his surety—Shankland prayed an appeal to the circuit court in his and Murray's name against the wishes of Murray, and without his authority signed his name to the appeal bond, and procured Winham to become their surety. The Supreme Court held that Coles was no party to the judgment in the Supreme Court, and that Anderson, the surety upon the appeal bond, was liable before him. So too, I think, we must hold, unless we over-rule the case of *Coles* v. *Anderson,* which has been cited with approbation in the case of *Kinzer* v. *Helm,* 7 Heis., 672.

But it is argued there is this difference between the case of *Coles* v. *Anderson* and the case before us. Coles did not know an appeal had been taken and his name signed to the appeal bond until after the affirmance of the judgment in the Supreme Court; whereas, Murray had full notice of these facts before the rendition of the judgment in the circuit court. Can this make any difference or change the law of the case? Can Winham complain? In the language of Judge McKinney: "It was his business before in-

curring liability, to have inquired into the authority of the other parties to prosecute an appeal in the name of Coles, or to sign his name to the appeal bond in his absence. He is presumed to know they had no right to do so, and if misled by their opinions he must abide the consequences." If Winham had not signed the appeal bond, the judgment would have been col-lected from Shankland, who was then solvent and had property amply sufficient to pay this judgment. By signing the appeal bond, and attempting to hold Mur-ray liable upon a judgment to which he was not a party, for an appeal which he did not pray, and upon a bond which he did not sign, has grown this pro-tracted litigation. Shankland is dead and his estate insolvent. A loss must fall upon one of these sureties, "and a familliar principle in equity is, that it must be cast upon him by whose act it has been occa-sioned:" 8 Hum., 492.

With the utmost deference to the other members of the court, I think the decree of the chancellor should be affirmed.