# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 15, 2002 Session

## FIRST CITIZENS NATIONAL BANK AS TRUSTEE FOR THE TRUST ESTATE OF WILL WRAY
### v.
### JANIECE WRAY

Appeal from the Circuit Court for Lake County
No. 00-8096    Lee Moore, Judge

No. W2002-00525-COA-R3-CV - Filed May 21, 2003

This case involves a trust. The decedent established a trust in his will. His son-in-law and a bank were designated as co-trustees. A parcel of property with a home was placed into the trust. The trust allowed one of the beneficiaries, the decedent's grandson, and his wife to live in the house at no charge. The beneficiary and his wife divorced, and as part of their marital dissolution agreement, the beneficiary gave his ex-wife his possessory interest in the home, at no charge. The son-in-law/trustee died, leaving the bank as the sole trustee. The bank required the ex-wife to begin paying rent; she declined. The bank then filed the instant lawsuit against the ex-wife for past rent from the time they first requested rent from her, and also a declaratory judgment permitting the bank to sell the home. The trial court found that the trustees ratified the terms of the MDA between the beneficiary and the ex-wife, allowing her to remain in the home rent-free until the trust expired. The bank appeals. We reverse, finding that the trustees could not ratify the MDA, a contract to which the trust was not a party.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Jason L. Hudson, John W. Palmer, Dyersburg, Tennessee, for appellant, First Citizens National Bank as Trustee for the Trust Estate of Will Wray.

Michael D. Fitzgerald, Nashville, Tennessee, for appellee, Janiece Wray.

# OPINION

In 1956, Will Wray ("Decedent") executed a Last Will and Testament in which he created a trust ("Trust"). The trust was to benefit his wife Dora, their two daughters Karneese and Lucille, their son Ernest, and Ernest's two children, Jim Wray ("Jim Wray") and Martin Wray ("Martin Wray"). The co-trustees were the predecessor to First Citizens National Bank ("Bank"), and the Decedent's son-in-law, Schuyler Martin ("Schuyler Martin"). The Trust gave the trustees the power to sell any property of the Trust, except for the real estate owned by the Decedent at the time of his death. The Trust included a spendthrift clause,[1] and also stated: "No beneficiary shall have any power to sell, assign, transfer, encumber or in any other manner anticipate or dispose of his or her interest in the trust estate or the income produced thereby." The Trust was to terminate twenty-one years after the death of the Decedent's last surviving child.

On dates not included in the trial court record, the decedent died, and his grandson, Jim Wray, one of the beneficiaries, married Janiece Wray. In 1982, co-trustee Schuyler Martin deeded real property into the Trust on which a home was constructed. Thus, the Trust owned the home. Jim and Janiece Wray lived in the home from 1982 until their divorce in 1995, during which time the co-trustees sought no rent from them. The Marital Dissolution Agreement ("MDA") between Jim and Janiece Wray "granted" to Janiece Wray her former husband's possessory interest in the real property on which their home was located, at no charge to her, so long as she remained single.[2] The MDA also provided that Jim Wray would indemnify Janiece Wray for any action taken to remove her from the home.[3]

---

[1] The Trust instrument states:

> Neither the principal nor the income of the trust created herein shall be liable for the debts of any beneficiary thereof, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity.

[2] The MDA provides:

> The Parties have had unrestricted possessory use of a home located at 110 Martin Drive, Tiptonville, Tennessee which is owned by the Wray Estate/Trust. It is the understanding of the parties that they or [Jim] shall have continued future use of the home. They state to the Court that they are unaware of any Trust provision being violated by this divorce that should affect their [his] future possessory use of the home.

[3] The MDA provides:

> Any future rights for possessory use of this home that the Husband may have are hereby given to the Wife for her future use and possession of the home so long as she remains single. The Husband further pledges to support the Wife in any action taken to remove her from the home by any Trustee of the Wray Estate/Trust. Any responsibilities that the possessor of the home may have, such as the upkeep and repairs of the home, become the responsibility of the Wife as long as she shall remain in possession.

Ernest Wray, the Decedent's last surviving child, and co-trustee Schuyler Martin both died in 1999.  Thus, Jim Wray and Martin Wray were the sole beneficiaries of the Trust, and the Bank was the sole trustee.  The Bank then met with Jim Wray and Martin Wray to discuss the disposition of properties owned by the Trust.  It was decided that the beneficiaries' mother, who was living in another property owned by the Trust, would be allowed to continue to live there rent-free.  Jim Wray, Martin Wray, and the Bank, however, decided that income should be sought from the property in which Janiece Wray was living.  At the meeting, Jim Wray did not mention the provision of the MDA ostensibly permitting Janiece Wray to live in the home at no charge.

In early 2000, the Bank contacted Janiece Wray and requested that she begin paying $300 per month rent for the home beginning March 15, 2000.  Citing the MDA, Janiece Wray declined to pay rent.  The Bank then sued Janiece Wray, seeking rent from March 16, 2000 forward, and a declaratory judgment allowing them to sell the property.  Janiece Wray argued that statements made to her by co-trustee Schuyler Martin, the provisions of the MDA, and the trustees' past failure to collect rent prevented them from seeking future rent.  She also filed a third-party complaint against her ex-husband, beneficiary Jim Wray, seeking indemnification from him in the event she became obligated to pay rent to the Bank.

A bench trial was held on December 9, 2001.  At the outset of the hearing, Janiece Wray voluntarily dismissed Jim Wray.  The Bank then proceeded with its proof.  Bank representatives testified that the Bank did not attempt to collect rent on the property from 1982 to 1999.  A Bank representative met with Jim Wray and Martin Wray in June 1999, and they decided that "rent should indeed be charged" on the property in which Janiece Wray lived.  At the meeting, Jim Wray did not discuss the provisions of the MDA.  The Bank representative contacted Janiece Wray; she told the representative about the MDA and refused to pay rent.

Janiece Wray also testified.  She said that she had lived in the house at no charge since 1982.  She also said that co-trustee Schuyler Martin put the property and the home into the Trust so that she and her former husband would have a marital home.  Janiece Wray testified that, when she became divorced in 1995, co-trustee Schuyler Martin, deceased by the time of the hearing, told her he wanted her to remain in the house so that her college-age children would have a place to come home to on the weekends and holidays.  Janiece Wray said that, during the time in which she had lived in the house, she had replaced the central heating and air-conditioning unit, installed new carpet and wall paper, had painted, and had generally maintained the home.

After the trial, the trial court issued a written order.  In the order, the trial court found that Jim and Janiece Wray, by entering into the MDA granting Jim Wray's possessory interest to Janiece, had no power to bind the Trust.  The trial court ruled, however, that the Bank and Schuyler Martin, through their conduct, were aware of and ratified the provision of the MDA that allowed Janiece Wray to remain in the home.  The trial judge stated:

> It is clear by the course of conduct of [Schuyler Martin and the Bank] . . . that all
> trustees were aware of and have followed and relied on the terms and conditions of

the [MDA] in dealing with this trust property. . . . By their course of conduct, [Schuyler Martin and the Bank] as co-trustee[s] ratified the terms and conditions of the [MDA] as they applied to the subject property.[4]

Thus, the trial court denied and dismissed the Bank's petition seeking rent and a declaration of its authority to sell the subject property. From this order, the Bank now appeals.

On appeal, the Bank argues that the trial court erred in finding that the Bank ratified the MDA or any oral agreement made between co-trustee Schuyler Martin and Janiece Wray. The Bank asserts that the MDA would be void as it applies to Trust property. It asserts that the statute of limitations would prevent the MDA from affecting the Trust, because the Bank, here the party to be charged, did not sign the MDA. The Bank also argues that the statute of frauds would not permit the oral agreement purportedly made by Schuyler Martin to stand, and that, since the Bank was not aware of the terms of the MDA, any promise made by Schuyler Martin to Janiece Wray would have been a unilateral act of a co-trustee that would not bind the Trust. Janiece Wray argues that the trial court's ruling should be affirmed because the Bank ratified Schuyler Martin's interpretation of the provision in the MDA by allowing Janiece Wray to stay in the home without objection.

Because this case was heard by the trial court sitting without a jury, it is reviewed *de novo* upon the record with a presumption of the correctness of the findings of fact by the trial court, unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted).

We first address the Bank's argument that the trial court erred in determining that co-trustees Schuyler Martin and the Bank ratified the provision of the MDA giving Janiece Wray the possessory interest in the house at no charge.

A contract made in the principal's name by another purporting to act for him may be ratified by the principal. 1 Tenn. Juris., Agency, § 72 (citing *Winham v. Crutcher*, 78 Tenn. 610 (1882)). Ratification is the express or implied adoption or confirmation by the principal of an act or contract performed or entered into on his behalf by one who acts as his agent without authority to do so. 1 Tenn. Juris., Agency, § 73 (citing *Bagley & Co. v. Union-Buffalo Mills Co.*, 9 Tenn. App. 63 (1928)). Once the principal acquires full knowledge of the actions of the unauthorized agent, the principal must reasonably promptly protest or disaffirm the contract entered into on his behalf; if he fails to do so, his silence can amount to ratification of the contract. *Valley Fid. Bank & Trust Co. v. The Cain P'ship, Ltd.*, 738 S.W.2d 638, 639-40 (Tenn. Ct. App. 1987) (citations omitted); *see also Carnes v. Polk*, 44 Tenn. 87, 95 (Tenn. 1867); *Duffy Tool & Stamping, Inc. v. Bosch Auto. Motor Sys. Corp.*, No. M1997-001440-COA-R3-CV, 2000 Tenn. App. LEXIS 63, at *18-19 (Tenn.

---

[4]The trial judge noted that Jim Wray had not only failed to support his former wife in this action, as contemplated in the MDA, but that he asked the Bank to either sell the property or require Janiece Wray to begin paying rent.

-4-

Ct. App. Feb. 1, 2000); ***Coronado Prods., Inc., v. Stewart***, 1988 Tenn. App. LEXIS 672, at \*18 (Tenn. Ct. App. Nov. 2, 1988); ***Hinton v. Robinson***, 364 S.W.2d 97, 102 (Tenn. Ct. App. 1962); 1 Tenn. Juris., Agency, § 77.

In this case, regardless of the action or inaction of either of the co-trustees, Schuyler Martin or the Bank, there could be no "ratification" of the MDA. The Trust is not a party to the MDA between Jim Wray and Janiece Wray, ostensibly or otherwise. The Trust received no benefit from the provisions of the MDA. It is undisputed that Janiece Wray knew that Jim Wray was a beneficiary of the Trust, not a trustee, and there was no indication that Jim Wray was entering into any type of agreement on behalf of the Trust. The concept of ratification[5] simply does not apply with respect to the MDA entered into between Jim Wray and Janiece Wray.[6] In this appeal, Janiece Wray points to no authority by which the ability of the trustees to act in the best interest of the Trust, whether by charging rent for the use of the property or by disposing of the property, is impinged upon by Jim Wray entering into an agreement with Janiece Wray "granting" her any rights he had to possession of the home.

At the trial, there was testimony from Janiece Wray regarding an oral promise allegedly made by co-trustee Schuyler Martin that she would be permitted to live in the house indefinitely at no charge. Over the Bank's hearsay objection, Janiece Wray testified that Schuyler Martin wanted her to stay in the home so that her children would have a place to come home to on the weekends and holidays. She stated:

> He wanted to [sic] me to be in that house so that my children have a house to come to. Amy was just graduated. David was in college. He wanted the house for them to come home to every weekend and holiday. He wanted to [sic] them to have a home.

Even if consideration to the Trust in exchange for such an agreement had been recited, which it was not, the trial court made no factual finding of an agreement between Schuyler Martin, on behalf of the Trust, and Janiece Wray. We find no error in the trial court declining to find an agreement between Martin, on behalf of the trust, and Janiece Wray. Such statements by Schuyler Martin, assuming arguendo that they are true, would not restrict the ability of the Bank, as sole trustee at this point, to act in the best interest of the Trust by charging rent for use of the property or by disposing of it.

---

[5]There is no allegation that Janiece Wray relied to her detriment on any action or inaction by the Bank or Schuyler Martin. Indeed, in her testimony, the only actions she took with respect to the home were routine maintenance, during which time she lived in the house rent-free.

[6]Moreover, the terms of the MDA are inconsistent with any reliance by Janiece Wray on Jim Wray's authority to bind the Trust, since the MDA expressly provides that Jim Wray would "support" Janiece Wray regarding any action to remove her from the home.

Therefore, under all of these circumstances, we must conclude that the trial court erred in dismissing the Bank's petition on the basis of ratification of the MDA between Jim Wray and Janiece Wray. This decision by the trial court must be reversed, and the case must be remanded.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed to appellee, Janiece Wray, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE